# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| KENNETH METTE, | ) |
| Plaintiff, | ) 13 C 01359 |
| v. | ) |
| | ) Judge Edmond E. Chang |
| VILLAGE OF MAYWOOD | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Kenneth Mette, was a firefighter employed by Defendant Village of Maywood up until August 2009. R. 1, Compl. ¶¶ 1-2. Following a change in policy requiring firefighters to live within fifteen miles of Maywood, Mette, who did not live within the approved radius, was informed that he would be fired. R. 5-2, Am. Compl. ¶¶ 6, 10, 19. Mette ultimately tendered his unconditional resignation on August 24, 2009. *Id.* ¶ 19.

Mette challenged the residency requirement that led to the end of his employment by filing a charge with the federal Equal Employment Opportunity Commission (EEOC), but the EEOC dismissed the charge in 2011. Am. Compl. ¶¶ 20-21. The Notice of dismissal went unclaimed, so the EEOC reissued the Notice in 2012. *Id.* ¶ 22. Later that year, Mette filed a state-court complaint with a claim he entitled "wrongful discharge." *See* Compl. at 1. Then, in 2013, Mette amended his complaint to add claims under the First and Fourteenth Amendments, as well as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Am. Compl. ¶¶ 29, 34, 37. Maywood

removed the case to federal court,[1] and has moved to dismiss Mette's federal claims as time-barred and Mette's state claim as "inappropriate given the grievance procedures in the relevant contract." R. 5; R. 19, Def.'s Reply at 1. The Court agrees that the federal claims are time-barred and dismisses them. Having dismissed the federal claims from Mette's lawsuit, the Court also relinquishes jurisdiction over Mette's remaining state claim.

**I. Background**

Mette was employed as a firefighter by Maywood from August 1980 to August 2009. Compl. ¶¶ 1-2. At some point during Mette's employment, Maywood established a residency requirement that required its employees to live within fifteen miles of Maywood. *Id.* ¶ 6. Mette lived outside of this radius, and, in May 2009, was told that he was in violation of the residency rule and needed to leave work immediately. *Id.* ¶ 10. Following the unsuccessful resolution of this issue through his workplace grievance procedure, Mette submitted his unconditional resignation on August 24, 2009. Am. Compl. ¶¶ 15-19.

Mette then filed a Charge of Discrimination with the EEOC on November 4, 2009, asserting that Maywood applied its residency requirement with greater rigidity to its white employees than its employees of color. *Id.* ¶ 20. The EEOC dismissed the charge on December 12, 2011, advising Mette in a mailed Notice that he had 90 days from receipt of the Notice to file a Title VII claim. *Id.* ¶ 21. Mette alleges he never

---

[1]The Court has subject matter jurisdiction over Mette's federal claims under 28 U.S.C. § 1441(a).

received that letter. *Id.* Because the letter was returned to the EEOC unclaimed, the EEOC reissued the Notice on January 26, 2012. *Id.* ¶ 22. Mette received the reissued Notice soon thereafter. *Id.* On April 12, 2012, Mette filed—in state court—a complaint containing a single claim for "wrongful discharge." Compl. at 1. Mette expressly asserted his federal claims for the first time in his amended complaint filed on January 23, 2013. Am. Compl.

## II. Standards of Review

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

To determine the applicable statute of limitations for section 1983 actions for a claim such as Mette's, the federal court adopts the forum state's statute of limitations for personal injury claims. *See Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). In Illinois, the borrowed statute of limitations for personal-injury section 1983

3

cases filed in federal court is two years. 735 ILCS 5/13-202; *Mitchell v. Donchin*, 286 F.3d 447, 450 & n.1 (7th Cir. 2002) (applying two-year Illinois statute of limitations to a First Amendment claim); *Ashafa*, 146 F.3d at 462;; *see also Lucien v. Jockisch*, 133 F.3d 464, 466 (7th Cir. 1998) (applying two-year Illinois statute of limitations to an equal protection claim, among others). Some section 1981 claims, on the other hand, "arise[] under an Act of Congress enacted after December 1, 1990" and are therefore governed by the federal "catch-all" four-year statute of limitations. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (internal quotation marks omitted). In particular, wrongful termination claims were made possible only by the 1991 amendments to section 1981, so the catch-all period applies to wrongful termination claims. *Id.* at 383.

### III. Analysis

### A. First Amendment Claim

Mette concedes that he expressly pled his First Amendment claim for the first time in his amended complaint, which was filed on January 23, 2013. R. 18, Pl.'s Resp. at 2. But Mette's amended complaint was filed well over two years after the date on which the alleged speech occurred (the date is not specified, but it had to be sometime before August 24, 2009—the date of Mette's resignation). Am. Compl. ¶ 19. Mette nevertheless argues that his First Amendment claim is not time-barred: "[b]y timely filing his [original] Complaint in State court, METTE effectively put the Defendant VILLAGE on notice that he would be pursuing redress for the adverse action he had suffered." Pl.'s Resp. at 2. Moreover, Mette appears to argue that even if his claim

4

would otherwise be time-barred, because his earlier attempts to articulate his First Amendment arguments were "frustrated by the sham grievance process," the Court should equitably toll the two-year statute of limitations period. *Id.* at 3-4; *see Lucien*, 133 F.3d at 466 (citations omitted). The Court rejects both arguments.

First, even had Mette's original complaint effectively put Maywood on notice that Mette might later bring a First Amendment claim, notice alone is not sufficient to preserve Mette's claim.[2] Were mere notice of a potential claim sufficient to satisfy a statute of limitations requirement, prospective plaintiffs could wait indefinitely to actually bring a claim in circumstances where the defendant was made generally aware of the claim within the statute of limitations period. Such a rule would render statutes of limitations effectively meaningless, and Mette cites no authority for the proposition he advances. Because Mette did not raise his First Amendment claim until January 23, 2013, well outside of the two-year statute of limitations period for bringing the claim, Count 1 of his claim is untimely. *See Mitchell*, 286 F.3d at 450 & n.1.

Second, in his response brief, Mette asserts that

> The defendant's mechanistic calculation that METTE's First Amendment cause of action was time-barred in 2011 rests on the VILLAGE's own frustration of METTE's efforts to bring this claim before the Board of Fire and Police Commissioners. Granting of dismissal on this basis would allow the defendant to profit from squelching METTE's allegations with its sham grievance process.

---

[2]Neither party raises the possibility that the relation-back doctrine, Fed. R. Civ. P. 15(c)(2), could apply to the amended complaint's First-Amendment claim. Mette is represented by retained counsel, and the Court declines to raise the issue on its own initiative, *cf. Day v. McDonough*, 547 U.S. 198, 205 (2006) ("[C]ourts are under no *obligation* to raise the time bar *sua sponte*." (citations omitted)). It is possible for Mette to move to reconsider, but he will have to explain why this argument was not made the first time around.

5

Pl.'s Resp. at 3. Although Mette does not say so expressly, he appears to be asking the Court to equitably toll the statute of limitations period. Equitable tolling permits the Court to excuse a plaintiff's untimely claim where, despite the plaintiff's exercise of due diligence, he is unable to bring his claim in a timely manner. *Shropshear v. Corp. Counsel of the City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001). Usually in these cases, it is the defendant who is responsible for the plaintiff's failure to sue within the limitations period—but the fault need not be the defendant's so long as it is not the plaintiff's. *See id.*

Exactly how Maywood "frustrat[ed]" Mette's efforts to bring his claim before the Board of Fire and Police Commissioners is unclear, and Mette never explains what makes Maywood's grievance procedures a "sham," nor does he ask for discovery on the issue (let alone explain why discovery he would need on it). *See* Pl.'s Resp. at 3. What's more, even if Maywood's grievance procedure somehow did delay Mette's suit—a conclusion that the record does not support—equitable tolling nevertheless does not apply here because Mette did not diligently bring the First Amendment claim even after filing the original complaint on April 12, 2012. By that date, whatever obstacle to filing suit that Maywood put in Mette's place was lifted. Yet Mette did not assert the First Amendment claim until the amended complaint, on January 23, 2013, nearly nine months after filing the original complaint (and nearly 3½ years after he resigned in August 2009). This is too long to satisfy the due diligence requirement. *Elmore v. Henderson,* 227 F.3d 1009, 1013 (7th Cir. 2000) ("[Plaintiff] could not possibly invoke

6

the doctrine of equitable tolling unless he sued just as soon as possible after the judge's action made him realize that the statute of limitations had run. He waited four months to sue and has offered no excuse for the delay."); *Shropshear*, 275 F.3d at 595, 599 ("[Plaintiff] flunks equitable tolling . . . because he admits having waited for more than a year to inquire whether his lawyer had filed suit and another five months after that to file suit himself." (citations omitted)). Therefore, equitable tolling does not apply, and Mette's First Amendment claim is time-barred and dismissed with prejudice.

### B. Equal Protection Claim

Mette also concedes that he expressly pled his equal protection claim for the first time in his amended complaint, which was filed on January 23, 2013. *See* Pl.'s Resp. at 4. He presents two arguments in the alternative as to why this claim is nevertheless timely: (1) his "invocation of the [F]ourteenth [A]mendment's proscription of race discrimination" in his amended complaint "implicates 42 USC §1981 [sic], which prohibits race discrimination in the making and enforcement of contracts," and is therefore subject to § 1981's four-year statute of limitations, Pl.'s Resp. at 3; and (2) his original complaint sufficiently states a Fourteenth Amendment claim by setting forth "allegations [that] are the epitome of denial of equal protection based on invidious racial classification" even if it did not "use the language of a constitutional scholar," *id.* at 4. The Court again rejects both of Mette's arguments.

First, Mette cannot avail himself of § 1981's four-year statute of limitations because Mette did not invoke § 1981 in either his original or amended complaint; that statutory provision first appears in Mette's response brief to the dismissal motion.

7

Mette's original complaint is titled: "VERIFIED COMPLAINT FOR WRONGFUL DISCHARGE" and appears to only assert a single state-law claim. *See* Compl. at 1, 3-4. Mette's amended complaint is more specific, setting forth four counts, including (for the first time) federal-law claims. *See* Am. Compl. at 5-10. But even those additional claims did not cite to § 1981. In Count Two, the only possible pertinent section of his amended complaint, Mette asserts the "VIOLATION OF FOURTEENTH AMENDMENT OF THE US [sic] CONSTITUTION." Am. Compl. at 7. This is the section in which Mette would have the Court read-in a § 1981 claim. But these allegations specified that "METTE's right to equal protection of the law is further secured by the private right of action granted by 42 U.S.C. § 1983"—which is the cause of action for asserting an equal protection claim—but gives no indication that he also seeks to raise a claim under 42 U.S.C. § 1981. Am. Compl. ¶ 32. The fact that Mette does clearly refer to § 1983 in the relevant part of the amended complaint undermines Mette's assertion that it effectively sets forth a § 1981 claim, because that interpretation expects the Village and the Court to read between-the-lines to discover other unspecified claims. Because there is no other hint of a § 1981 claim in the amended complaint, Mette's argument is, in effect, that any complaint with a § 1983 equal-protection claim must be read to also advance a § 1981 claim. Mette cites no authority for that proposition, and in light of the differences between those types of claims, it is rejected.

Turning back to the § 1983 equal protection claim, Mette argues that his *original* complaint implicitly sets forth a § 1983 equal protection claim, even though that complaint does not cite either the Equal Protection Clause or 42 U.S.C. § 1983.

Even if the original complaint were to be construed as having alleged an equal protection claim, however, that claim would still be time-barred. Mette's claim accrued on or before August 24, 2009, when he resigned. Am. Compl. ¶ 19. But Mette's original complaint was filed on April 12, 2012, Compl. at 1—over two years later. Therefore, regardless of whether Mette's original complaint sufficiently states a § 1983 equal protection claim, it is untimely under Illinois's applicable two-year statute of limitations. *Lucien*, 133 F.3d at 466. Mette makes no response to Maywood's specific argument on this point, so his equal protection claim is dismissed as untimely.

### C. Title VII Claim

Mette concedes that he failed to file his original complaint within 90 days of the publication of the EEOC's initial Notice. *See* Pl.'s Resp. at 6. He argues, without citation to authority, that his suit is nevertheless timely because he filed his original complaint within 90 days of his receipt of the EEOC's *reissued* Notice. *Id.* But Mette did not expressly assert a Title VII claim until filing his amended complaint, well over 90 days following the EEOC's reissue of his notice. Am. Compl. at 8-9; *see also* Pl.'s Resp. at 6. Therefore, Mette's claim is only timely if (1) it is Mette's receipt of the *reissued* Notice (rather than the first one) that begins the EEOC 90-day period, *and* (2) Mette's original complaint in state court actually asserted a Title VII claim.

First, it is true that the EEOC 90-day Right to Sue period generally begins on the date that the plaintiff actually *receives* that notice. *St. Louis v. Alverno Coll.*, 744 F.2d 1314, 1316 (7th Cir. 1984). But there is an exception to the actual-receipt trigger: when the employee fails to receive the EEOC's notice because of events within the

9

employee's own control, the "ninety-day limit beg[ins] running on the date the notice was delivered to the most recent address plaintiff provided the EEOC." *Id.* at 1317 (citations omitted) (holding that the "plaintiff's failure to tell the EEOC that he had moved was not an event beyond his control"). Put another way, if it is the employee's own fault that he did not receive the notice, then the 90-day clock starts triggering on delivery to the address. This exception might apply here. Mette himself alleges that the initial EEOC Notice was mailed to "a second home that [Mette] visited only infrequently, and he never received it." Am. Compl. ¶ 21. If it was Mette himself who provided the EEOC with the contact address of the second home, rather than a home that he visited with greater frequency, then the 90-day limit started on the date on which the initial Notice was delivered. *St. Louis*, 744 F.2d at 1317. There are hints in the filings that Mette was the one who provided the EEOC with the address (the address is listed on the charge he filed), but to figure this out definitively, discovery is needed. In the context of a dismissal motion, before discovery, attributing the address to Mette is jumping the gun and cannot be the basis for dismissal.

But even if Mette is given the benefit of the doubt and enjoys a 90-day clock start of some time in January or February 2012 (when he received the reissued Notice, *see* Am. Compl. ¶ 22), he did not explicitly allege a Title VII claim until he filed the amended complaint around one *year* later, on January 23, 201*3*. So for the Title VII claim to be timely, Mette must argue that the *original* complaint (filed in April 2012) alleged a Title VII claim. On this point, Mette contends, again without any citation to authority, that although "the original Complaint (filed by a different attorney) was

10

poorly framed," because Mette's "EEOC charge, the original Complaint, and the <u>Amended Complaint</u> **all** refer to disparate treatment on the basis of racial classification[,] [Mette's] meritorious claims must not be dismissed merely for want of inclusion of the magic words 'Title VII.'" Pl.'s Resp. at 6 (formatting in original). But Mette failed to do more than merely include some "magic words." Mette's original complaint is again titled "VERIFIED COMPLAINT FOR WRONGFUL DISCHARGE" and affirmatively asserts only that single state-law claim for wrongful discharge. Compl. at 1, 3-4. Moreover, the original complaint was filed in state court, and the case was only removed to federal court after the amended complaint—which for the first time expressly asserted federal claims—was filed. R. 1, Notice of Removal at 1-2. Even viewed in the light most favorable to Mette, in this context, the original complaint cannot reasonably be construed to assert a federal Title VII claim. As an explanation, Mette's current attorney says that a different attorney filed the original complaint, Pl.'s Resp. at 6, but that is neither here nor there (it might have made a difference if Mette was *pro se* at the time). Because the original complaint did not bring a Title VII claim, the claim is untimely because the amended complaint's assertion of the Title VII claim was well after the 90-day clock expired.

### D. State-Law Claim

Finally, Count Four of Mette's amended complaint alleges a claim for wrongful termination under Illinois law. Because the Court has concluded that Mette's federal claims are each time-barred, instead of considering Mette's sole remaining claim under state law, the Court relinquishes supplemental jurisdiction. *See United Mine Workers*

*of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). There is no suggestion that the statute of limitations would bar Mette from pursuing the state-law claim in state court, and judicial efficiency does not weigh in favor of this Court retaining jurisdiction. *See id.* at 726; *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) . Adjudication of the merits of Mette's sole remaining claim—a state-law claim—should therefore be addressed by the Illinois state courts.

## IV. Conclusion

For the reasons discussed, the Village's motion to dismiss [R. 5] is granted in part: the federal-law claims are dismissed. The Court relinquishes jurisdiction over the state-law claim, and the case is remanded to the Circuit Court of Cook County.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 4, 2013